Harry WIGGINS, Supervisor of Liquor Control, State of Missouri, Respondent,

v.

Elmer L. COY, d/b/a Elmer's Place, 903 Main Street, Joplin, Jasper County, Missouri, Appellant.

No. 54948.

Supreme Court of Missouri, Division No. 1.

Feb. 8, 1971.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

John R. Martin, Joplin, for appellant.

HOUSER, Commissioner.

This is an appeal from the judgment of the Circuit Court of Jasper County affirming the decision of the Supervisor of Liquor Control revoking the license of Elmer L. Coy to sell 5% beer by the drink. A state officer as such is a party and therefore this Court has jurisdiction to entertain this appeal.

The Supervisor of Liquor Control charged that on May 16, 1969 Elmer L. Coy sold a quantity of intoxicating liquor (one bottle of 5% beer) to Jean Delaine Riner (Asher), a person under the age of 21 years. A hearing was held before the supervisor at which Jeanie Delaine Asher testified that she went to Coy's tavern on May 16, 1969 with three other persons; that she ordered four beers from Coy; that the four people had four bottles of beer; that she paid Coy $5, received the change from him, and that she was nineteen years old. There was other evidence that the bottle of beer she was drinking was taken from her by a police officer, subjected to laboratory examination by a chemist, and that it contained 4.41% alcohol by volume and 3.51% alcohol by weight.

Error is assigned on the ground that there was no substantial competent evidence that Mrs. Asher was a minor or that appellant sold her any beer; that her testimony as to her age was so contradictory, conflicting and self-destructive that it was without probative value. Appellant claims that the only testimony as to the age of Mrs. Asher "came from Mrs. Asher herself" and that her testimony, considered as a whole, demonstrates the low degree of intelligence of the witness and that her testimony is unreliable, conflicting, contradictory and self-destructive. (Her examination disclosed that she did not know elementary information such as her birth date, the date of her marriage, either as to day, month or year; her house number on Pearl Street; who was President of the United States or who was the first President of the United States; how many years she attended school, etc. She cannot read or write. She admitted that on August 28, 1968 she stated to the police department that she was 21 years old. She testified that her father died in World War I and World War II and gave her mother's name first as Lulu Belle Shelly, then Mileen Shelly, and finally Meleen Dykes.) Appellant relies upon the rule that where a party relies on the testimony of a single witness to prove a given issue and the testimony of that witness is contradictory and conflicting, one version tending to prove the issue but the other tending to disprove it, and there is no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made and the trier of the fact will not be permitted to speculate or guess which statement of the witness should be accepted. Stephens v. Thompson, Mo.Sup., 293 S.W.2d 392, 394; In re Spencer, Mo.App., 439 S.W.2d 8, 11.

■ The difficulty with the contention with respect to her age is that, assuming that Mrs. Asher's testimony about her age is not to be relied upon for the reasons assigned, there was documentary evidence supporting her testimony that she was 19 years old. The State offered in evidence a birth certificate of the Bureau of Vital Statistics of the Arkansas State Board of Health, signed by Gerald K. Patton, M.D., certified as a full, true and correct copy of the original certificate on file in the office of the State Registrar. The certification, signed by J. T. Herron, M.D., State Registrar, recited that he was the legal custodian of the original certificate. The certified copy bore the imprint of the seal of the Arkansas State Board of Health, Little Rock, Arkansas. The certificate recorded the live birth of a female child named Jean Delaine Riner on November 17, 1949.

When the birth certificate, State's Exhibit B, was offered in evidence, counsel for appellant objected to its admission on the ground that it was not properly identified. The Supervisor ruled that "Subject to the objection by Mr. Martin (appellant's counsel), I'll have to determine whether its admissible or not." Thereafter the supervisor made no formal ruling one way or the other on the admissibility of Exhibit B. Under § 490.220, RSMo 1969, V.A. M.S. which provides that "All records * * *, kept in any public office * * * of a sister state, not appertaining to a court, shall be evidence in this state, if attested by the keeper of said record * * *, and the seal of his office, if there be a seal," State's Exhibit B was admissible in evidence, and it constituted prima facie evidence that Mrs. Asher was born on November 17, 1949, which would make her nineteen years old on May 16, 1969. See Lynde v. Western & Southern Life Insurance Co., Mo.App., 293 S. W.2d 147, holding that a California death certificate properly certified was admissible as a properly authenticated record kept in a public office of a sister state under § 490.220, supra, and that it was prima facie evidence of the facts stated in the certificate.

Appellant's objection that Exhibit B was never admitted in evidence is without merit. Exhibit B was received by the supervisor "subject to objection." There is noth-

ing in the record to show that Exhibit B then or thereafter was excluded from evidence. It was returned as an exhibit attached to the transcript. Under these facts we take Exhibit B as having been admitted in evidence and considered by the trier of the fact and that we may consider it on this review. In German-American Bank v. Manning, 133 Mo.App. 294, 113 S.W. 251, an appeal in an action on a special tax bill in which the trial court admitted the tax bill in evidence subject to objection the St. Louis Court of Appeals said: "The tax bill was received in evidence subject to objection, was not afterwards excluded, and hence must be treated as before the court." 113 S.W., l.c. 252.

Accordingly, there was substantial competent evidence that Mrs. Asher was a minor at the time in question.

■ Appellant asserts, however, that there was no substantial competent evidence that appellant sold Mrs. Asher any beer. He argues that the only evidence offered by the State came from Mrs. Asher, who testified that she was the purchaser; that there is a direct conflict between her testimony and that of appellant as to how many beers were purchased and who made the purchase; that the police officer's testimony tends to support the testimony of appellant because both of them testified that there were only three bottles of beer on the table. A thorough review of Mrs. Asher's testimony reveals that notwithstanding she is unschooled, illiterate, ignorant and that her testimony was amazingly weak on names and dates and contradictory on several other matters, her testimony on this phase of the State's case was not contradictory, conflicting or self-destructive. She recalled clearly the details of the events which occurred in appellant's tavern on May 16, 1969, recited the details definitely and articulated them clearly. She stated that she was acquainted with Elmer's place in Joplin; that she knew Elmer when she saw him; that she had seen him in the tavern and ordered beer from

him; that she had been in the tavern on May 16; that there were a lot of people in the tavern; that she and Charlie and Evelyn and her boy friend drank beer there that day; that she ordered four beers from Elmer Coy; that there were two Falstaffs and two Buds on the table; that she paid for the beer, giving $5.00 to Elmer, and that he brought her back the change. The supervisor heard Mrs. Asher give this testimony. He had an opportunity to observe the witness, appraise her ability to comprehend and the reliability of her account of what happened, and he made a determination of where the truth lay as between Mrs. Asher's testimony and that of appellant. The trier of the fact considered her testimony trustworthy and truthful. He rejected appellant's denial of having made the sale to Mrs. Asher. On appeal the circuit judge filed a memorandum stating that he had carefully read the transcript and found that this witness' testimony was "specific, direct and unequivocal" with reference to the alleged sale of beer to her by the licensee; that the supervisor could reasonably believe her testimony and that the action of the supervisor was supported by competent and substantial evidence. Our conclusion is the same as that of the circuit judge.

Upon the whole record the supervisor reasonably could have made the findings reached and result stated upon a consideration of all of the evidence before him and his findings and order revoking appellant's license are supported by competent and substantial evidence. Accordingly, the judgment of the circuit court affirming the order of revocation is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.